# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MEGAN L. PRIM, | : |
| Plaintiff, | : |
| vs. | :     CA 18-0250-MU |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security, | : |
| Defendant. | : |

## MEMORANDUM OPINION AND ORDER

Plaintiff Megan L. Prim brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 22 & 23 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the parties' arguments at the February 5, 2018 hearing before the undersigned, the Court concludes that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 22 & 23 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

## I. Procedural Background

Plaintiff filed an application for supplemental security income benefits on September 1, 2015, alleging disability beginning on August 28, 2015. (*Compare* Tr. 21 *with* Tr. 156-161.) Prim's claim was initially denied on December 10, 2015 (Tr. 75 & 94-98) and, following Plaintiff's December 16, 2015 request for a hearing before an Administrative Law Judge ("ALJ") (Tr. 100-02), a hearing was conducted before an ALJ on April 19, 2017 (Tr.33-73). On August 21, 2017, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to supplemental security income benefits. (Tr. 10-21.) More specifically, the ALJ determined at the fifth step of the five-step sequential evaluation process that Prim retains the residual functional capacity to perform those light jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 15-21 *with* Tr. 67-69). On September 7, 2017, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (*see* Tr. 154); the Appeals Council denied Prim's request for review on May 3, 2018 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to diabetes mellitus with neuropathy, hypertension, congestive heart failure, bilateral wrist pain, retinopathy, cataracts and vision issue, depression, and anxiety. The Administrative Law Judge (ALJ) made the following relevant findings:

> **2. The claimant has the following severe impairments: diabetes mellitus with neuropathy, hypertension, congestive heart failure, bilateral wrist pain, retinopathy, cataracts and vision issues, depression, and anxiety (20 CFR 416.920(c)).**
>
> . . . .
>
> **3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the**

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

. . .

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can handle and finger frequently with her hands, bilaterally.  She can frequently climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch and crawl. With regard to vision, she would have difficulty with fine print and fine discrimination, but she can read ordinary newspaper or book size print, travel independently, work with large objects, and avoid common hazards. She can never work at unprotected heights and [around] moving mechanical parts. She can operate a motor vehicle, but she would need outside mirrors for commercial driving and she should avoid commercial driving at night. She is limited to performing simple, routine tasks, and simple work-related decisions. She can occasionally interact with supervisors and corrective action should be clear and objective. She can occasionally interact with coworkers and she would function best with a few familiar coworkers. She can occasionally interact with the public. She can deal with occasional changes in a work setting.

. . .

5.   The claimant is unable to perform any past relevant work (20 CFR 416.965).

. . .

6.   The claimant was born on September 1, 1991 and was 23 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.   The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable jobs skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> **9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**
>
> . . .
>
> **10. The claimant has not been under a disability, as defined in the Social Security Act, since August 28, 2015, the date the application was filed (20 CFR 416.920(g)).**

(Tr. 12, 13, 15, 20 & 21 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

A claimant is entitled to an award of supplemental security income benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905(a). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities (that is, a severe impairment), she is not disabled. 20 C.F.R. § 416.920(c). At step three, if a claimant proves that her impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. § 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, she must prove that her physical and/or mental

impairments prevent her from performing any past relevant work. 20 C.F.R. § 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[2] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").[3]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a

---

[2] *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Prim asserts two reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ's RFC determination is not supported by substantial evidence because in reaching this determination the ALJ mischaracterized her testimony to paint a picture that suggests she can perform a wide array of daily activities; and (2) the ALJ committed reversible error in violation of SSR 00-4p in failing to resolve a conflict between the vocational expert's (VE's) testimony and the Dictionary of Occupational Titles ("DOT").

**A.     ALJ's RFC Determination and Whether His Purported Mischaracterization of Plaintiff's Testimony Undermines the Determination**.    In reaching his RFC determination (*see* Tr. 15, Finding 4), and ultimate decision of non-

---

[4]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

6

disability, Plaintiff points out the ALJ concluded that "claimant's ability to engage in a wide array of activities of daily living is persuasive evidence that the claimant's alleged symptoms resulting from physical and/or mental impairments are not totally disabling[,]" (Tr. 19), and found "significant that the claimant testified that she is able to care for her own personal needs and that of her infant child." (*Id.*) On this appeal, Plaintiff stakes the position that in making these general statements in support of his RFC determination, the ALJ mischaracterized Prim's hearing testimony to the extent that the RFC determination is wholly undermined.

    Before considering the import of Plaintiff's argument, the undersigned would be remiss in failing to recognize that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of

what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also* 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments, including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . ."). Because "[a]n RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments[,]" *Packer, supra,* 542 Fed.Appx. at 891, consideration of a claimant's testimony and credibility is certainly an aspect of any such determination**,** *see id.* at 892 (in finding that Plaintiff had failed to establish that her RFC assessment was not supported by substantial evidence, the Eleventh Circuit considered, among other matters, the ALJ's consideration of Packer's testimony, specifically the credibility determination).

In this case, Plaintiff contends that the ALJ, in making the general statements outlined above, mischaracterized her hearing testimony. Indeed, Plaintiff contends that her hearing testimony that her Mom comes to her apartment every day, for at least an hour, to help with the baby (bathing the baby) and that several times a week her Mom will take the baby for the day when her heart problems cause her to feel bad (*see* Tr. 62-63) is diametrically opposed to and inconsistent with the ALJ's conclusions that her "ability to engage in a wide array of activities of daily living is persuasive evidence that the claimant's alleged symptoms resulting from physical and/or mental impairments are not

8

totally disabling[,]" (Tr. 19), and "that she is able to care for her own personal needs and that of her infant child." (*Id.*)

The undersigned, however, cannot agree with Plaintiff that the foregoing statements/observations of the ALJ in the hearing decision constitute a mischaracterization of her hearing testimony and here is why. Under questioning by the ALJ, Plaintiff testified that she could drive during the daytime (Tr. 47), experiences no problems lifting and carrying between 10 to 20 pounds (Tr. 53-54), has no problems sitting and would have no problems performing a job which required her to sit and lift a maximum of 10 pounds (Tr. 54-55), has no problems taking care of her personal needs (*see id.* at 55), takes care of her baby (changes, feeds and plays with her, etc.) (Tr. 56), cleans her apartment (*see id.*), attends church (*id.*), takes her daughter to the park (*id.*), and shops for groceries (Tr. 57; *see also id.* at 58 ("In the morning, I wake up first before my baby. I take my medicine, I eat and I get her clothes ready, her food ready. So, when she wakes up, I dress her, get her hair ready, feed her and then I make sure the house is straighten[] up before we go anywhere, before we do anything. And then, if we don't go anywhere, we'll sit down and watch TV, play. Between 11:30 and 12:00, I give her a bottle and give her a nap. And, while she's doing that, I'm just watching TV or probably read[ing] a book sometime[s]. . . . [I] [p]repar[e] dinner. [I get my baby's] bath stuff ready and her clothes. Trying to straighten up the house because sometimes she does mess up. After dinner, I give her a bath [and] an hour later[,] [a]fter she gets her bath, she sleeps. I just sit around until I get my stuff together. After I take my shower, I go to sleep at like 12:30, 1:00."[5])).

---

[5] Prim testified that this represents a typical day for her. (Tr. 58-59.)

It is certainly no mischaracterization of this testimony, given by Prim at the administrative hearing, for the ALJ to conclude, as he did, that Plaintiff's "ability to engage in a wide array of activities of daily living is persuasive evidence that the claimant's alleged symptoms resulting from physical and/or mental impairments are not totally disabling[,]" (Tr. 19), and "that she is able to care for her own personal needs and that of her infant child." (*Id.*) In other words, the just quoted statements/conclusions/observations of the ALJ are reflective (accurately) of Plaintiff's hearing testimony when questioned by the ALJ. (*Compare id. with* Tr. 47 & 54-58.) And while the Plaintiff certainly gave more "restrictive" testimony regarding her daily activities when questioned by her attorney (*see* Tr. 61-63), that latter testimony does not undermine the import of her earlier testimony because she certainly could have made mention of her Mom's assistance in responding to the ALJ's questions but did not (*compare* Tr. 57 (Plaintiff's testimony that she needs someone to help with her baby while she shops for groceries) *with* Tr. 56-58 (no mention of the need for assistance from her Mom when testifying about her daily care for her daughter, including giving her baby a bath)). Most importantly, it is clear that the ALJ properly discounted Prim's more restrictive testimony as being contrary to the medical evidence. (*See* Tr. 19 ("While the claimant may experience some degree of pain and/or other symptoms, the medical evidence does not support that she experience[s] the level of symptomatology to the extent alleged.")). Indeed, it is impossible to "square" Prim's testimony that she requires the assistance of her Mom to bathe her daughter daily because of her wrist pain (Tr. 62) with medical evidence in the record reflecting treatment of her wrists on only one occasion (*see* Tr. 553 (reflecting injection into bilateral first dorsal compartment and recommendation for use of anti-inflammatories as needed and bracing,

following Prim's complaints of radial-sided wrist pain, especially with picking up the baby, but denial of numbness or tingling)),[6] as well as her earlier testimony when she did not qualify her ability to care for her daughter (*compare id. with* Tr. 47 & 54-58). And, with respect to Plaintiff's testimony that her mother takes care of her daughter several times/days each week due to her heart problems (Tr. 62-63), this testimony is refuted not only by evidence in the record that Prim's congestive heart failure significantly resolved after the delivery of her baby[7] and is controlled by proper use of medication (*see, e.g.,* Tr. 528, 530 (no complaints with volume overload, no shortness of breath), 531 (June 9, 2016 diagnosis of mildly decreased global ventricular systolic function, New York Heart Association Class 1, Stage C), 548 (same diagnosis on October 24, 2016)), but, as well, by her own hearing testimony that she experiences heart-associated problems/difficulties only when she does not take her medication (Tr. 63).

The undersigned finds that the ALJ did not mischaracterize Prim's hearing testimony; rather, the statements/observations of the ALJ attacked by Plaintiff merely represent an appropriate review of the hearing testimony after a proper discounting of Prim's testimony regarding the level of daily assistance/help she requires of her mother. And since this Court cannot find that the ALJ mischaracterized Prim's hearing testimony, the undersigned likewise cannot find the ALJ's RFC determination unsupported in the record. In short, Plaintiff's first assignment of error is properly overruled.

---

[6] The undersigned notes that Plaintiff at no time during the hearing suggested that she suffered wrist pain with lifting her baby (Tr. 53 (Plaintiff's testimony that she lifts her 18-pound baby)), which was her chief complaint to Dr. Jared Burkett on December 14, 2016 (*see* Tr. 553), a failure that, in the Court's opinion, undermines Prim's testimony that she cannot bathe her daughter because of wrist pain.

[7] Prim's baby girl was born on May 25, 2016. (*Compare* Tr. 524 *with* Tr. 528.)

**B. Whether the ALJ Reversibly Erred in Violation of SSR 00-4p in Failing to Resolve a Purported Conflict Between the VE's Testimony and the DOT.** Here, the ALJ's RFC determination, as well as the hypothetical to the VE, included information relative to Prim's mental impairments that "corrective action [by supervisors] should be clear and objective" and that Prim "would function best with a few familiar coworkers." (*Compare* Tr. 15 (RFC determination) *with* Tr. 67-68 (hypothetical)). In response to the hypothetical, the VE identified three light jobs—small products assembler, housekeeping cleaner, and sampler—existing in significant numbers in the national economy (Tr. 68-69) and, immediately thereafter, stated her testimony was consistent with the DOT (Tr. 69). Plaintiff now argues[8] that there exists a conflict between the DOT and the testimony of the VE inasmuch as the DOT does not address whether corrective action would be clear and objective or whether Plaintiff would be able to work with a few familiar coworkers; thus, Plaintiff argues that the VE improperly indicated that her testimony was consistent with the DOT and that, instead, she should have been required to explain how the three-identified jobs matched the ALJ's RFC determination/hypothetical.

In this District, as well as in other districts in the Eleventh Circuit, it is clear that where the DOT is simply silent on an issue, there is no direct inconsistency between the testimony of the VE and the DOT. *Compare Hall v. Astrue,* 2010 WL 2643565, *10 (S.D. Ala. June 29, 2010) ("[I]t is not clear that a conflict exists between the testimony of the VE and the DOT where the DOT is silent with respect to [the particular limitation at issue.]") *with Razor v. Commissioner of Social Security,* 2013 WL 5854575, *6 (M.D. Fla. Oct. 30,

---

[8] During the hearing, Prim did not "offer any evidence controverting the VE's opinion, nor did she object to the opinion." *Leigh v. Commissioner of Social Security,* 496 Fed.Appx. 973, 975 (11th Cir. Nov. 14, 2012).

2013) (finding no conflict existed between the VE's testimony and the DOT where the DOT is silent). Here, the VE's testimony that a person with Plaintiff's RFC could work as a small products assembler, a housekeeping cleaner, or a sampler was not in direct conflict with the DOT because the DOT is silent with respect to whether corrective action would be clear and objective or whether Plaintiff would be able to work with a few familiar coworkers. Accordingly, there is simply no basis for this Court to find, contrary to the VE's own testimony, that the VE's testimony was inconsistent (or in conflict) with the DOT. Stated somewhat differently, "[b]ecause there was no apparent inconsistency between the VE's opinion[/testimony] and the DOT, the ALJ's decision is supported by substantial evidence." *Leigh, supra.* Accordingly, the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying

13

Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 12th day of February, 2019.

                                                s/P. Bradley Murray
                                                **UNITED STATES MAGISTRATE JUDGE**